**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

JASON DARRELL WEST,

        Petitioner,

v.                                  Case No. 3:16-cv-785-J-32MCR

SECRETARY OF THE FLORIDA
DEPARTMENT OF CORRECTIONS, et al.,

        Respondents.

_____

## ORDER

### I.  Status

      Petitioner, an inmate of the Florida penal system, initiated this action by filing a Petition Under 28 U.S.C. § 2254 for a Writ of Habeas Corpus (Doc. 1) (Petition). He challenges his 2010 state court (Duval County, Florida) judgment of conviction for burglary while wearing a hood or mask. He was sentenced to thirty years in prison as a habitual felony offender. Respondents filed a Response to Petition for Writ of Habeas Corpus (Doc. 9) (Response) with Exhibits (Docs. 9-1 to 9-5) (Ex.). Petitioner filed a Reply (Doc. 14). The case is ripe for review.[1]

_____

[1] "In a habeas corpus proceeding, the burden is on the petitioner to establish the need for an evidentiary hearing." Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318 (11th Cir. 2016) (citing Chavez v. Sec'y Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011)). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (citation omitted). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Id. The Court find that "further factual development" is not necessary. Turner v. Crosby, 339 F.3d 1247, 1275 (11th Cir. 2003). Thus, an evidentiary hearing will not be conducted.

## II. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal habeas corpus petition. See Ledford v. Warden, Ga. Diagnostic & Classification Prison, 818 F.3d 600, 642 (11th Cir. 2016), cert. denied, 137 S. Ct. 1432 (2017). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" Id. (quoting Greene v. Fisher, 565 U.S. 34, 38 (2011)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the petitioner's claims on the merits. See Marshall v. Sec'y Fla. Dep't of Corr., 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue an opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. See Harrington v. Richter, 562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation,

> the federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning. But the State may rebut the presumption by showing that the unexplained affirmance relied or most likely did rely on different grounds than the lower state court's decision, such as alternative grounds for affirmance that were briefed or argued to the state supreme court or obvious in the record it reviewed.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018).

When a state court has adjudicated a petitioner's claims on the merits, a federal court cannot grant habeas relief unless the state court's adjudication of the claim was "contrary

to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," 28 U.S.C. § 2254(d)(1), (2). A state court's factual findings are "presumed to be correct" unless rebutted "by clear and convincing evidence." Id. § 2254(e)(1).

> AEDPA "imposes a highly deferential standard for evaluating state court rulings" and "demands that state-court decisions be given the benefit of the doubt." Renico v. Lett, 559 U.S. 766, 773 (2010) (internal quotation marks omitted). "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fairminded jurists could disagree on the correctness of the state court's decision." Harrington v. Richter, 562 U.S. 86, 101 (2011) (internal quotation marks omitted). "It bears repeating that even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." Id. [at 102] (citing Lockyer v. Andrade, 538 U.S. 63, 75 (2003)). The Supreme Court has repeatedly instructed lower federal courts that an unreasonable application of law requires more than mere error or even clear error. See, e.g., Mitchell v. Esparza, 540 U.S. 12, 18 (2003); Lockyer, 538 U.S. at 75 ("The gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness."); Williams v. Taylor, 529 U.S. 362, 410 (2000) ("[A]n unreasonable application of federal law is different from an incorrect application of federal law.").

Bishop v. Warden, GDCP, 726 F.3d 1243, 1253-54 (11th Cir. 2013) (internal citations modified).

**B. Exhaustion and Procedural Default**

There are prerequisites to federal habeas review. Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all state court remedies that are available for challenging his state conviction. See 28 U.S.C. § 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly present[]" every issue raised in his federal petition to the

state's highest court, either on direct appeal or on collateral review. <u>Castille v. Peoples</u>, 489

U.S. 346, 351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state prisoners

must give the state courts one full opportunity to resolve any constitutional issues by invoking

one complete round of the State's established appellate review process." <u>O'Sullivan v.

Boerckel</u>, 526 U.S. 838, 845 (1999); <u>see also</u> <u>Pope v. Rich</u>, 358 F.3d 852, 854 (11th Cir.

2004) (noting "that <u>Boerckel</u> applies to the state collateral review process as well as the

direct appeal process").

 In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state
> prisoner must exhaust available state remedies, 28 U.S.C. §
> 2254(b)(1), thereby giving the State the "'opportunity to pass
> upon and correct alleged violations of its prisoners' federal
> rights.'" <u>Duncan v. Henry</u>, 513 U.S. 364, 365, 115 S. Ct. 887,
> 130 L.Ed.2d 865 (1995) (per curiam) (quoting <u>Picard v.
> Connor</u>, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438
> (1971)). To provide the State with the necessary "opportunity,"
> the prisoner must "fairly present" his claim in each appropriate
> state court (including a state supreme court with powers of
> discretionary review), thereby alerting that court to the federal
> nature of the claim. <u>Duncan</u>, <u>supra</u>, at 365-366, 115 S. Ct. 887;
> <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 845, 119 S. Ct. 1728,
> 144 L.Ed.2d 1 (1999).

<u>Baldwin v. Reese</u>, 541 U.S. 27, 29 (2004).

 A state prisoner's failure to properly exhaust available state remedies results in a

procedural default which raises a potential bar to federal habeas review. The United States

Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state
> prisoner's conviction and sentence are guided by rules
> designed to ensure that state-court judgments are accorded
> the finality and respect necessary to preserve the integrity of
> legal proceedings within our system of federalism. These rules

-4-

include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[2] supra, at 747-748, 111 S. Ct. 2546; Sykes,[3] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127-1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617-618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted claims from being heard is not without exceptions. A prisoner may obtain federal review of a defaulted claim by showing cause for the default and prejudice from a violation of federal law. See Coleman, 501 U.S., at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 566 U.S. 1, 9-10 (2012). Thus, procedural defaults may be excused under certain circumstances. Notwithstanding that a claim has been procedurally defaulted, a federal court may still consider the claim if a state habeas petitioner can show either (1) cause for and actual prejudice from the default; or (2) a fundamental miscarriage of justice.

Ward v. Hall, 592 F.3d 1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause and prejudice,

the procedural default "must result from some objective factor external to the defense that prevented [him] from raising the claim and which cannot be fairly attributable to his own conduct." McCoy v. Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992) (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[4] Under the prejudice prong, [a petitioner] must show that "the

---

2 Coleman v. Thompson, 501 U.S. 722 (1991).

3 Wainwright v. Sykes, 433 U.S. 72 (1977).

4 Murray v. Carrier, 477 U.S. 478 (1986).

> errors at trial actually and substantially disadvantaged his
> defense so that he was denied fundamental fairness." Id. at
> 1261 (quoting Carrier, 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may receive consideration on the merits of a procedurally defaulted claim if the petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there
> remains yet another avenue for him to receive consideration on
> the merits of his procedurally defaulted claim. "[I]n an
> extraordinary case, where a constitutional violation has
> probably resulted in the conviction of one who is actually
> innocent, a federal habeas court may grant the writ even in the
> absence of a showing of cause for the procedural default."
> Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is
> exceedingly narrow in scope," however, and requires proof of
> actual innocence, not just legal innocence. Johnson v.
> Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).  To establish ineffective assistance, a person must show that: (1) counsel's performance was outside the wide range of reasonable, professional assistance; and (2) counsel's deficient performance prejudiced the challenger in that there is a reasonable probability that the outcome of the proceeding would have been different absent counsel's deficient performance. Strickland, 466 U.S. at 687.

Notably, there is no "iron-clad rule requiring a court to tackle one prong of the Strickland test before the other." Ward, 592 F.3d at 1163. Since both prongs of the two-part Strickland test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." Id. (citing Holladay v. Haley, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in Strickland: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." 466 U.S. at 697.

"The question is not whether a federal court believes the state court's determination under the Strickland standard was incorrect but whether that determination was unreasonable - a substantially higher threshold." Knowles v. Mirzayance, 556 U.S. 111, 123 (2009) (quotation marks omitted). "If there is 'any reasonable argument that counsel satisfied

*Strickland*'s deferential standard,' then a federal court may not disturb a state-court decision denying the claim." *Hittson v. GDCP Warden*, 759 F.3d 1210, 1248 (11th Cir. 2014) (quoting *Richter*, 562 U.S. at 105). As such, "[s]urmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010). "Reviewing courts apply a 'strong presumption' that counsel's representation was 'within the wide range of reasonable professional assistance.'" *Daniel v. Comm'r, Ala. Dep't of Corr.*, 822 F.3d 1248, 1262 (11th Cir. 2016) (quoting *Strickland*, 466 U.S. at 689). "When this presumption is combined with § 2254(d), the result is double deference to the state court ruling on counsel's performance." *Id.* (citing *Richter*, 562 U.S. at 105); *see also Marshall*, 828 F.3d at 1285 ("The standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." (quotations and citation omitted)).

### III. Analysis

On September 25, 2009, the State of Florida charged Petitioner by information with burglary (structure/conveyance), a third-degree felony. Ex. A at 16. On December 22, 2009, the state filed an amended information charging Petitioner with burglary while wearing a hood or mask, a second-degree felony. *Id.* at 26. Petitioner was represented at trial by Todd Niemczyk, Esquire and Senovia Lance, Esquire. At the conclusion of the trial, the jury found Petitioner guilty as charged. *See id.* at 57. He challenges his judgment of conviction on the following fifteen grounds.[5]

---

[5] Several of Petitioner's arguments overlap and he makes variations of the same arguments throughout his Petition. The Court has addressed each ground separately, but notes at the outset that the record supports Petitioner's conviction, and he is not entitled to federal habeas relief on any ground.

***Ground One***

Petitioner argues that his trial counsel was ineffective for failing to object or move to exclude any evidence pertaining to his identification. Doc. 1 at 3-11. In support of this ground, he attacks the testimony of Mike Zager, the owner of the store that was burglarized, asserting that Mr. Zager's identification of him was unreliable; he argues that counsel was ineffective for failing to call Detective Fusco; and he claims that the photospread was suggestive and counsel was ineffective for failing to object to it. See id. at 5-9. Petitioner also asserts that the trial court erred in allowing the photospread into evidence without a proper predicate. Id. at 8-9. He acknowledges that he did not exhaust these claims in state court, but he argues that Martinez v. Ryan, 566 U.S. 1 (2012), excuses the procedural bar and permits this Court to hear the claims on the merits.

"In Martinez, the U.S. Supreme Court enunciated a narrow exception to the general rule that the lack of an attorney or attorney error in state post-conviction proceedings does not establish cause to excuse the procedural default of a substantive claim." Lambrix v. Sec'y, Fla. Dep't of Corr., 851 F.3d 1158, 1164 (11th Cir.), cert. denied, 138 S. Ct. 217 (2017). Under this exception, not only must Petitioner demonstrate that the trial court failed to appoint counsel or his counsel was ineffective in the initial collateral proceedings, but he must also demonstrate that the underlying ineffective assistance of trial counsel claim that he seeks to raise is a "substantial" one, meaning that the claim must have "some merit." Martinez, 566 U.S. at 14; see also Luciano v. Sec'y, Dep't of Corr., 701 F. App'x 792, 793 (11th Cir. 2017); Sullivan v. Sec'y, Fla. Dep't of Corr., 837 F.3d 1195, 1201 (11th Cir. 2016). Conversely, his claim is "insubstantial" if "it does not have any merit or . . . is wholly without

factual support." Martinez, 566 U.S. at 16. For the reasons that follow, the Court finds that Petitioner cannot demonstrate that his underlying ineffective assistance of counsel claims are substantial under Martinez.

Prior to trial, Petitioner's counsel filed motions in limine to exclude any testimony regarding an anonymous tip implicating Petitioner in the burglary and the introduction of a surveillance tape showing Petitioner in the subject store the day before the burglary. Ex. A at 35-36, 38-39. The trial court granted in part the motion regarding the anonymous tip but denied the motion regarding the surveillance video. Id. at 34, 37; see Ex. B at 6-11.

At trial, Mr. Zager testified that he reviewed the video of the burglary, and he realized that one of the individuals in the video had been in his store earlier.

> Q      And after watching that video was there anything that struck you about the people that came into the store?
>
> A      Yes, not when I originally watched it but before the detective came, when I was making the copy for it I realized that the individual that was behind the counter . . . was in earlier that day, had the same exact shorts, same exact shirt, same exact tennis shoes, tattoos on the arms, just never bothered to change clothes . . . .
>
> Q      And this individual had his face covered in the video that we saw?
>
> A      Correct.
>
> Q      But could you tell if he had the similar or same build?
>
> A      Same build, same clothes, same shorts, same shoes.
>
> Q      So that prompted you then to look at your video from earlier that day?
>
> A      It did. I went back because I remembered seeing that individual and I went back and watched earlier in the afternoon.

Q      Well, let's talk about earlier that afternoon. That would have been the day before?

A      Day before, correct.

Q      So July 8th, around what time were you able to figure out from the video did that person that you saw on this video of the burglary come into your store?

A      It was probably somewhere between 12:30 and 1:00 o'clock, somewhere in that ball park.

         . . . .

Q      . . . Do you remember when they entered how many people came in?

A      Three.

Q      And can you describe for me what they did when they came in, what you remember?

A      They came in looking for television sets. Two of them walked over to the television area, were asking questions in regards to TVs and what we carry and what our prices are. And one of them walked over to the other sides of the building by the counter or toward that other room that you see over there.

Q      When you say counter, is that the register area?

A      The register area, correct.

         . . . .

Q      What was the man that walked over to the register area wearing?

A      Black shirt, black shorts with the design on the side, white tennis shoes with the black stripe on the back.

Q      And you had interaction with all three of these men, right?

A     Correct.

Q     You got to talk to them, see their faces, they asked you questions?

A     Yes.

      . . . .

Q      . . . After viewing that video of your interaction earlier in the day and the video of the burglary, did you alert the detectives as to your suspicion about the person that was dressed in the black shirt and the black shorts?

A     Yes, when the detective came for the video, I showed her, not only gave her the DVD, I also showed her the video and showed her the tape from earlier in the afternoon and said that the individual that broke into our building never even changed clothes, they wore the same shorts, the same shirt, paused it where he was behind the counter where you could see the tattoos on his arm, also when he was walking in front of the counter earlier in the day similar tattoos on the arm that were there, same outfit.

      . . . .

Q     Let's talk about those tattoos because you mentioned you also noticed tattoos. What body part did you notice was tattooed that stuck out in your mind from your interaction?

A     The left arm cause that was the side as he walked in front of the counter, probably the one, I mean, he has on both arms but in the video what I noticed was the ones on the left arms cause he's got a full sleeve, and on the one when you're walking in front of the counter you can see those same tattoos.

Q     Okay. So when you saw the video of the burglary which is a still shot depicted in . . . State's 18, you right away remembered those tattoos were similar to what you had seen during your interaction in the store?

A     The first thing I noticed was the same shorts, the same shirt, and the same shoes. Then I noticed the arm on one of the pictures that you have there as he was coming across, and

> then I went back and looked at the other video to confirm and
> the same tattoos.

Ex. B at 41-44, 50-51, 54-55.

On cross-examination, Petitioner's counsel elicited testimony from Mr. Zager that the shorts and shoes worn by Petitioner when he was legally in the store the day before the burglary were removable,[6] and that he's not the only African American male in Jacksonville with the same build as the burglar.[7] Id. at 63-64. Counsel also elicited testimony that the videos were too blurry to specifically recognize the tattoos.[8] Id. at 64. In closing argument, Petitioner's counsel discussed the unreliability of the identification and the lack of evidence proving beyond a reasonable doubt that Petitioner committed the burglary, and he urged the jury to closely review all of the evidence. See id. at 130-41.

Upon review, this Court finds that Petitioner has failed to show his counsel was deficient in the manner suggested. Petitioner is simply unhappy with how the jury weighed the evidence. Because Petitioner cannot show his counsel was ineffective, this claim lacks

---

[6] Petitioner's counsel argued during his closing argument that "those clothes come off people, can change. Furthermore, other people wear similar style clothing." Ex. B at 134.

[7] It was not disputed at trial that Petitioner was legally in the store the day before the burglary. During closing argument, Petitioner's counsel stated: "It's extremely important to know that Mr. West is ID'd by being in the store lawfully the day before. . . . Compare the actions of the person identified, undisputedly so, is Mr. West, the guy in black." Ex. B at 132, 133. Petitioner acknowledges in his Petition that he admitted to lawfully being in the store the day before the burglary. Doc. 1 at 8, 13-14, 36.

[8] In closing argument, Petitioner's trial counsel stated: "They talked about the tattoos. He said he remembers them having tattoos the day before. And I tell you by all means look, take a magnifying glass, do what you have to do. You certainly can't see it in any of these. You can't see it in any of these pictures what the designs are and what they are. You can't. The witness admitted that. It's blurry, you can't tell if there is any definite match whatsoever." Ex. B at 135.

merit, and thus it is not a "substantial" claim warranting application of the <u>Martinez</u> exception. Petitioner has not otherwise shown both cause for and actual prejudice from the default. Nor has he shown that he is entitled to the fundamental miscarriage of justice exception. Accordingly, Petitioner is not entitled to federal habeas relief on this claim.

To the extent Petitioner also argues his counsel was ineffective for failing to call Detective Fusco as a witness, his claim is not substantial. Petitioner argues that Detective Fusco was "solely responsible for implicating the [P]etitioner as the burglar, and providing the tip that included the [P]etitioner's photo being included in a photo spread." Doc. 1 at 8. Petitioner's assertions are not supported by the record. In response to an intelligence bulletin which included photos of the suspects from the surveillance video, Petitioner was identified through an anonymous tip. As a result, his photograph was included in a photospread, and he was identified by Mr. Zager. Moreover, "'[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.'" <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 647 (11th Cir. 2016) (quoting <u>Waters v. Thomas</u>, 46 F.3d 1506, 1512 (11th Cir. 1995)). Counsel could have reasonably determined that calling Detective Fusco as a witness would have been more harmful to Petitioner's case, given that Detective Fusco could have testified that she personally interviewed Petitioner, he admitted to being in the store the day before the burglary, and his tattoos matched those of the suspect on the surveillance video. Considering the record on the whole, the Court finds that Petitioner has failed to show his counsel was deficient for not calling Detective Fusco as a witness, and therefore, this claim has no merit; thus, <u>Martinez</u> does not apply. Petitioner has not otherwise shown cause and

prejudice to excuse his default, nor is he entitled to the fundamental miscarriage of justice exception. Petitioner is not entitled to federal habeas relief on this claim.

Insofar as Petitioner argues that his counsel was ineffective for failing to object to the photospread as being unduly suggestive, such claim is also insubstantial and procedurally barred. An out-of-court identification is subject to exclusion if the identification procedure was unduly suggestive such that it created a substantial risk of misidentification. See Neil v. Biggers, 409 U.S. 188, 199 (1972). In determining whether an identification violates due process, a court undertakes a two-part analysis. "First, [the court] must determine whether the original identification procedure was unduly suggestive . . . . If [the court] conclude[s] that the identification procedure was suggestive, [the court] must then consider whether, under the totality of the circumstances, the identification was nonetheless reliable." Cikora v. Dugger, 840 F.2d 893, 895 (11th Cir. 1988) (citing Biggers, 409 U.S. at 199).

In Biggers, the Supreme Court identified five factors to be considered in determining whether the identification was reliable. They are: the witness's opportunity to view the suspect at the time of the crime, the witness's degree of attention, the accuracy of the description of the suspect, the level of certainty of the identification, and the length of time between the crime and the identification. See Biggers, 409 U.S. at 199. In Manson v. Brathwaite, 432 U.S. 98, 116 (1977), the United States Supreme Court stated that absent "a very substantial likelihood of irreparable misidentification," the identification of a suspect by a witness is evidence for the jury to weigh.

At trial, Mr. Zager testified that during the investigation, a detective showed him a photospread. He then described that interaction.

Q      The detective that came, what did they do, what did they show you?

A      It was a detective I hadn't met before, it was not the detective that was originally came on the case. He showed and said I have some photos, I want to know if you can - - if you see anybody that you recognize.

Q      And did he allow you to look through the photos? Describe for the jury how they were shown to you.

A      He put the photos down and laid them out on the counter.

Q      Did that detective do anything to indicate which photo you should choose?

A      No.

Q      Did he do anything to suggest which photo was relevant?

A      No.

Q      Were you able to identify the person that you had interacted with that day prior to the burglary?

A      Yes.

       . . . .

Q      Is this the photospread that you were shown by the detective?

A      Yes.

Q      And did you pick out from those photos a photograph?

A      I did.

Q      Can you pick out now which photograph you picked out?

A      (Indicated.)

Q      Did you sign that, too?

A      He made me sign the back.

Q      I see this is your signature?

A      Correct.

Q      And it's dated 7-24-09. Are you confident that the person you picked out of this photospread was the person that was in your store interacting with you that day?

A      Yes.

Q      And is that the person that was wearing the black shorts and the black shirt and the white tennis shoes?

A      Yes.

Ex. B at 55-57. Mr. Zager then identified Petitioner in the courtroom as the individual who came into his store the day before the burglary wearing the black shorts and shirt. Id. at 57-58.

Subsequently, Detective Kirk, the detective who showed Mr. Zager the photospread, testified as follows:

Q      Detective, let me direct your attention to July 9th of 2009, on that date were you aware that Detective Fusco was investigating a burglary that occurred at the Premier Rental Purchase business on Southside Boulevard?

A      Yes, sir, I was.

Q      Do y'all frequently work together on burglary cases?

A      Yes.

Q      Did you review the surveillance videos and reports that were written in this case?

A      Yes, sir, I did.

Q     After reviewing those things did Detective Fusco submit what's called an intelligence bulletin throughout the Jacksonville Sheriff's Office on July 13th?

A     Yes, sir.

Q     And in that intelligence bulletin were pictures of all of the suspects that were captured on surveillance video put into that bulletin?

A     Yes, sir.

Q     A day later did you receive a tip as to the photographs that were put into that bulletin?

A     Yes, sir, the burglary unit did receive a tip.

Q     Okay. Based on that tip was a photospread compiled with five photographs and also an additional photograph of the suspect Jason West?

A     Yes, sir, it was.

Q     What did you do with that photospread?

A     Yes, sir. On the 24th I took the photospread to the business and met with Mr. Zager, which is the manager of the business, and I instructed him to look at the photos, I provided him the six photographs, I told him to take a look at them and said to him there may or may not be a person that was involved in the incident in the group of pictures. And I asked him to take a look at the pictures. And if he recognized the person and was sure that was the person to sign the back of the picture.

Q     Detective, when you're compiling a photospread, let's say your suspect is a white male, do you just pick five or six random white guys or do you try to match the person's build and facial features and that kind of thing?

A     We try to match the facial features with height, weight.

      . . . .

Q      Showing you State's 21, I just want you to take a quick look at this and tell me if that was the same photospread you showed Mr. Zager on July 24th?

A      Yes, sir, it is.

Q      When you presented that to him was he able to identify a suspect?

A      Yes, sir, he did sign one of the back.

Q      I believe he signed the back of this photospread right here?

A      Yes, sir.

Q      Jury has already seen. Tell the jury about how sure he was of his identification.

A      He was positive as far as he recognized the person from the video as being that same person.

Ex. B at 74-76.

This testimony shows that any attempt by trial counsel to have the photospread excluded as unduly suggestive would have been futile. Petitioner fails to point to any evidence showing that the photospread was suggestive or that anything about the process would have led to a substantial likelihood of irreparable misidentification. Petitioner's counsel cannot be deemed ineffective for failing to make a meritless objection, and this claim is not substantial. Thus, <u>Martinez</u> does not apply to the procedural default of this claim. Petitioner has not otherwise shown both cause for and actual prejudice from the default. Nor has he shown that he is entitled to the fundamental miscarriage of justice exception. Petitioner is not entitled to federal habeas relief on this claim.

Finally, it appears that Petitioner is also trying to raise a claim that the trial court erred in allowing the photospread into evidence without a proper predicate. Doc. 1 at 8-9; Doc. 14 at 10. Petitioner did not raise this claim on direct appeal, and he cannot return to state court to exhaust this claim; thus, this claim is procedurally barred. Petitioner cannot rely on Martinez to excuse the procedural bar, because Martinez only applies to ineffective assistance of trial counsel claims. See Martinez, 566 U.S. at 16 ("The holding in this case does not concern attorney errors in other kinds of proceedings, including appeals from initial-review collateral proceedings, second or successive collateral proceedings, and petitions for discretionary review in a State's appellate courts. It does not extend to attorney errors in any proceeding beyond the first occasion the State allows a prisoner to raise a claim of ineffective assistance at trial, even though that initial-review collateral proceeding may be deficient for other reasons."); Gore v. Crews, 720 F.3d 811, 816 (11th Cir. 2013) (recognizing that "the Supreme Court's decision in Martinez is limited to claims of ineffective assistance of trial counsel"). He has failed to show cause or prejudice to excuse the bar. Neither has he shown that a fundamental miscarriage of justice will result if the Court does not review this claim on the merits. Thus, Petitioner is not entitled to federal habeas relief.

### Ground Two

According to Petitioner, his trial counsel was ineffective for failing to make a Confrontation Clause objection to the prosecution's introduction of Detective Fusco's out-of-court statement expressing certainty in her identification of Petitioner. Doc. 1 at 11. Petitioner states that Detective Fusco was the individual responsible for his photograph being included in the photospread, but because she did not testify at trial, he was unable to cross examine

her about her identification of Petitioner. Id. at 11-14. He further claims that the introduction of the photospread was "redundant," because he admitted to being in the store the day before the burglary. Id. at 13-14. Like Ground One, Petitioner acknowledges this claim is unexhausted and procedurally barred, but he relies on Martinez to excuse the default.

The Confrontation Clause of the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." U.S. Const. amend. VI. But no Confrontation Clause violation occurs when the witness in question did not provide evidence at trial. See Shuler v. Wainwright, 491 F.2d 1213, 1224 (5th Cir. 1974)[9] ("The Confrontation Clause of the Sixth Amendment applies to evidence actually disclosed at trial and a defendant has no right to confront a 'witness' who provides no evidence at the trial.") (citation omitted).

As summarized above, Detective Kirk testified that Detective Fusco was involved in the investigation of the burglary, and she submitted an intelligence bulletin containing pictures of the suspects from the surveillance video. As a result of the intelligence bulletin, an anonymous tip was received implicating Petitioner. At that point, a six-person photospread including Petitioner's photo was created and presented to Mr. Zager by Detective Kirk. Detective Fusco did not testify at trial, and there was no mention in any witness's testimony that Detective Fusco positively identified Petitioner. See United States v. Napolis, - - - Fed. App'x - - - , 2019 WL 2120806, at *2 (11th Cir. May 14, 2019) (finding that a defendant had no constitutional right to confront a confidential informant when the

---

[9] In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the United States Court of Appeals for the Eleventh Circuit adopted as binding precedent all decisions of the former United States Court of Appeals for the Fifth Circuit that were rendered prior to the close of business on September 30, 1981.

informant "neither testified at trial nor was quoted as a hearsay declarant"). The introduction at trial of the photospread is not equivalent to Detective Fusco testifying or providing evidence at trial. And the state is not required to call as a witness "everyone who laid hands on the evidence." <u>Melendez-Diaz v. Massachusetts</u>, 557 U.S. 305, 311 n.1 (2009). Therefore, Petitioner's claim lacks factual support in the record and thus is insubstantial. Petitioner is not entitled to use <u>Martinez</u> to excuse his procedural default, and he has not otherwise shown cause and prejudice to excuse the bar. Neither has he shown a fundamental miscarriage of justice would result if this Court does not hear the claim on the merits. Petitioner is not entitled to relief on the basis of this claim.[10]

### Ground Three

Petitioner claims that his trial counsel was ineffective for failing to "suppress" the identification evidence obtained pursuant to an illegal arrest.[11] Doc. 1 at 16; <u>see</u> Doc. 14 at 13-14, 17-18. He asserts that there was no probable cause to arrest him, and Detective Fusco submitted false information and/or withheld information in the affidavit for an arrest warrant. Doc. 1 at 16-18. He asserts that it was Detective Fusco who (1) first "implied that the [P]etitioner had a tattoo on his left calf," (2) "stated to the committing magistrate that the tattoo was visible from the video of the actual burglary," (3) "failed to inform the [c]ommitting magistrate that the [P]etitioner admitted to being in the store the day before the burglary,"

---

[10] Petitioner fails to explain how admission of the photospread was "redundant," and the Court does not find any fundamental unfairness from the introduction of the photospread into evidence. Insofar as Petitioner is attempting to raise a claim that the trial court erred in allowing the photospread to be admitted into evidence, the claim is procedurally barred and without merit as found in Ground One.

[11] It is unclear what specific identifying evidence Petitioner believes should have been suppressed.

and (4) "failed to mention that the faces of the three burglary suspects were concealed, and any tattoo worn by the burglars w[as] unrecognizable because of the blurriness of the video of the actual burglary." Id. at 17. He also claims that "[t]he only correlation [Mr. Zager] was able to make between the two videos is that the clothing of one of the masked individuals was very similar to the clothing worn by one of the patrons who entered into his store earlier." Id. He argues that "unlike the facts presented to the committing magistrate to establish probable cause for the [P]etitioner's arrest[,]" Mr. Zager's "testimony suggest[s] that he had no independent recollection of any tattoos on the arm of the burglar[ and] it was only after viewing the photographs provided to him . . . [at trial] did he discover and make reference to the tattoos located on the suspects left arm." Id. at 18. Petitioner points out that Mr. Zager did not testify that any of the burglars had a left calf tattoo, but Detective Fusco stated so in the affidavit for an arrest warrant. Id. Petitioner acknowledges this claim is unexhausted and procedurally barred, but relies on Martinez to excuse the default.

Like the claims raised in Grounds One and Two, this claim is not substantial. The alleged inconsistencies or differences between Mr. Zager's testimony and Detective Fusco's affidavit are inconsequential. Mr. Zager reviewed the surveillance video of the burglary. He realized that one of the burglars had been in his store earlier based on the individual's build, clothing, shoes, and arm tattoos. Ex. B at 41-42. He then watched the surveillance video from the day before, when that individual had legally been in his store, and confirmed his belief that it appeared to be the same person. Petitioner does not contest that he was in the store the day before the burglary. See supra n.7. Detective Fusco reviewed the tapes and distributed an intelligence bulletin. An anonymous tip was received implicating Petitioner in

-23-

the burglary. Detective Fusco interviewed Petitioner in the Baker County Jail, where he was being held on unrelated charges, and was able to personally observe Petitioner's build and tattoos. Subsequently, the photospread was shown to Mr. Zager, and he positively identified Petitioner. Detective Fusco then completed the affidavit for an arrest warrant.

Who first identified or discussed Petitioner's leg tattoo would not change the result here. Also of no moment is whether Mr. Zager had an "independent recollection" of or could describe in detail the exact tattoos on Petitioner's arm. When reviewing the surveillance tape of the burglary, something struck him about one of the burglars and he confirmed his belief that the person had been in his store earlier by reviewing the surveillance tape from the day before. Detective Fusco's affidavit was based on her investigation and personal interview of Petitioner, and it is supported by the record. Had a motion to suppress been filed based on the alleged misstatements in and/or omissions from the arrest warrant affidavit, it would have been denied.[12] Even removing reference to Petitioner's leg tattoo (which only appears in the section of the affidavit identifying Petitioner–the body of the affidavit only refers to tattoos), and adding that Petitioner admitted to being in the store the day before,[13] the faces of the burglars were covered, and the surveillance videos were blurry, probable cause would still

---

[12] To prove an ineffective assistance of trial counsel claim based on counsel's failure to file a motion to suppress, Petitioner "must prove (1) that counsel's representation fell below an objective standard of reasonableness, (2) that the Fourth Amendment claim is meritorious, and (3) that there is a reasonable probability that the verdict would have been different absent the excludable evidence." Zakrzewski v. McDonough, 455 F.3d 1254, 1260 (11th Cir. 2006) (citing Kimmelman v. Morrison, 477 U.S. 365, 375 (1986)). Petitioner has not met this burden.

[13] The affidavit states: "The suspect in the video is wearing the same clothing and tattoos as Jason West was wearing the day before the burglary when he was in the store." Ex. A at 9. This suggests that Petitioner was in the store the day before the burglary.

exist to arrest Petitioner. Petitioner has not made a substantial showing of a "deliberate falsehood or reckless disregard for the truth" in the affidavit supporting the issuance of the arrest warrant. <u>Franks v. Delaware</u>, 438 U.S. 154, 171 (1978).

Petitioner's trial counsel cannot be deemed ineffective for failing to file a meritless motion. Considering the record, the Court finds that this claim has no merit and thus it is not a "substantial" claim warranting application of the <u>Martinez</u> exception. Petitioner has not otherwise shown both cause for and actual prejudice from the default. Nor has he shown that he is entitled to the fundamental miscarriage of justice exception. Petitioner is not entitled to habeas relief on Ground Three.

### Ground Four

Petitioner argues that his trial counsel was ineffective for failing to investigate and call as witnesses four individuals (Jasmyne Haywood, Candace Jackson, Reginald Burrdugh, and Dale Jones) who would have provided testimony showing that he did not have the leg tattoo at the time of the burglary. Doc. 1 at 20-21. He asserts that this prejudiced him because he was misidentified, and his counsel's "do nothing strategy" led to him having no evidence to impeach the state's identification. <u>Id.</u>

Petitioner raised this claim as ground one in his state court post-conviction motion filed pursuant to Florida Rule of Criminal Procedure 3.850. The court identified <u>Strickland</u> as controlling precedent for ineffective assistance of counsel claims, and found as follows:

> In Ground One, Defendant argues that counsel rendered ineffective assistance for failing to investigate and call four witnesses to testify at trial and impeach the State's identification of Defendant. He asserts that the victim identified him based upon tattoos that were similar to those of the masked burglary perpetrator caught on store security video. He

alleges that Jasmyne Haywood, Candace Jackson, and Reginald Burrdugh would have impeached his identification, as they would have testified that Defendant did not have the leg tattoo that was shown at trial at the time of the burglary. He further alleges that Dale Jones would have testified that he put a tattoo of Moses on Defendant's left leg in jail after Defendant's arrest.[14] Defendant provided affidavits from each of these witnesses, as well as one from his grandmother, Ms. Haywood.[15]

In the Affidavit for Arrest Warrant, Jacksonville Sheriff's Office Detective S. N. Fusco indicated that she investigated a burglary of Premier Rental Purchases that was caught on security video. Detective Fusco reported that the victim recognized the suspects in the video by their clothing and physical characteristics as people who had recently been in the store. Detective Fusco reviewed the video and noted that a suspect in the video was wearing the same clothing and had the same tattoos as a person that was previously in the store. After submitting an intelligence bulletin throughout the sheriff's office, Detective Fusco received an anonymous tip that Defendant was the suspect in the video. Detective Fusco then interviewed Defendant in the Baker County Jail.[16] Defendant denied the burglary, but Detective Fusco noted that Defendant's physical description and tattoos were the same as the suspect in the security video. In addition, the Arrest and Booking Report reflects that Defendant had a left calf tattoo at the time of his arrest.

During trial, Jacksonville Sheriff's Office Detective Claude Kirk testified he compiled a photospread containing Defendant's photograph based on the tip. Detective Kirk stated

---

[14] Dale Jones stated that in September 2009, he was in the Duval County Jail with Petitioner and at that time, he tattooed Petitioner's left leg and stomach. Ex. I at 8 (duplicate at Ex. I at 55).

[15] Ms. Haywood submitted an affidavit asserting that Petitioner did not have any leg tattoos prior to his arrest and that he received a tattoo while he was incarcerated.

[16] The arrest and booking report is dated August 28, 2009, and under "distinguishing marks," it states "tattoo on left calf." Ex. I at 134. Dale Jones' affidavit states that in September 2009, he and Petitioner were in the Duval County Jail together and that is where Mr. Jones placed a tattoo on Petitioner's left leg. Ex. I at 8 (duplicate at Ex. I at 55).

that the manager of the burglarized store, Mike Zager, identified Defendant from the photospread.

Mr. Zager testified that, after the store was burglarized, he watched and copied the store security video. While copying the video, he realized that one of the suspects in the video had been in the store earlier that day. He stated that the suspect was wearing the same clothing as earlier in the day, that the suspect had the same arm tattoos, and that the suspect had a similar build. He also stated that the suspect's left arm tattoos stood out to him because the suspect had a full sleeve of tattoos. Mr. Zager also testified that he was able to identify the same person out of Detective Kirk's photospread for similar reasons.

Mr. Zager then identified Defendant during trial as the person who came into the store wearing the same clothing as the burglar in the video. Throughout his entire testimony, Mr. Zager never identified Defendant based on any leg tattoos. However, at the close of their case, the State introduced photographs of Defendant's leg and arm tattoos. During closing arguments, the State referenced the security video and the photographs of Defendant's tattoos and argued that the tattoos were the same.

A review of the evidence presented at trial shows that Mr. Zager never identified Defendant based on any leg tattoo. Thus, Defendant's witnesses would not have impeached his identification of Defendant. Further, the Court finds that the witness affidavits are inherently incredible. As noted above, Detective Fusco observed that Defendant had the same tattoos as the suspect in the video when [s]he interviewed Defendant at the Baker County Jail. Additionally, while all of the witness affidavits indicate that Defendant had no leg tattoo prior to his arrest and Mr. Jones alleged that he placed a tattoo on Defendant's left leg after his arrest, the Arrest and Booking Report clearly indicates that Defendant had a tattoo on his left calf at the time of arrest. Moreover, the Court finds it highly implausible that a defendant, who has been arrested for a crime in which the perpetrator was identifiable in part based upon tattoos, would cho[o]se to receive a tattoo in the same location as the perpetrator caught on security video. Therefore, the Court finds that Defendant's claim has no merit and Ground One is denied.

Ex. I at 109-12 (internal record citations and footnote omitted). Petitioner appealed, and the First District Court of Appeal (DCA) per curiam affirmed the state court's decision without issuing a written opinion. Ex. M.

To the extent that the First DCA affirmed the trial court's denial on the merits, this Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.[17] Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to federal habeas relief on Ground One.

Even assuming the state court's decision is not entitled to deference, the claim has no merit. Counsel's strategic decisions are due a "'heavy measure of deference,'" and "hindsight is discounted by pegging adequacy to 'counsel's perspective at the time.'" Rompilla v. Beard, 545 U.S. 374, 381 (2005) (quoting Strickland, 466 U.S. at 689, 691). As previously noted, "'[w]hich witnesses, if any, to call, and when to call them, is the epitome of a strategic decision, and it is one that we will seldom, if ever, second guess.'" Ledford, 818 F.3d at 647 (quoting Waters, 46 F.3d at 1512).

Considering the record, the Court finds that Petitioner has not shown that his counsel's failure to present the testimony of these witnesses fell below an objective standard of reasonableness. During his trial testimony, Mr. Zager did not identify Petitioner by the

---

[17] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," this Court presumes the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

tattoo on his leg. Instead, the state submitted a photo of Petitioner's leg tattoo taken on the day of trial and urged the jury to compare it to the surveillance videos and still photographs admitted into evidence. Nevertheless, even assuming deficient performance, Petitioner has not shown prejudice, as he has not shown a reasonable probability exists that the outcome of his trial would have been different had these witnesses testified in the manner Petitioner suggests. Petitioner was identified in other ways–he was in the store the day before wearing the same clothing with visible arm tattoos. Ground Four is denied.

### Ground Five

Petitioner claims that his trial counsel was ineffective by failing to investigate and present evidence that at the time of the burglary, he did not have the tattoo that the state took pictures of and presented to the jury as proof of his identification as the burglar. Doc. 1 at 22-23. He claims this tattoo was the only evidence linking him to the crime. Id. at 23.

Petitioner raised this claim as ground two in his Rule 3.850 motion. The court identified Strickland as controlling precedent for ineffective assistance of counsel claims, and found as follows:

> In Ground Two, Defendant argues that counsel rendered ineffective assistance for failing to present evidence that, at the time of his arrest, Defendant did not have the tattoo that was photographed and presented at trial. He asserts that counsel failed to investigate jail records, which would have shown that he did not have the leg tattoo. He also argues that the tattoo was the only thing placing him at the scene of the crime and that he would have been acquitted if counsel had introduced the jail records proving he did not have the tattoo.

> Defendant's claim is without merit. As set forth in Ground One, prior to Defendant's arrest, Detective Fusco observed that Defendant had the same tattoos as the suspect in the security video. Additionally, the Arrest and Booking

report shows that Defendant had a distinguishing left calf tattoo when arrested. Further, the Court finds it unlikely that Defendant would have chosen to receive a tattoo similar to that of the actual burglary perpetrator. Therefore, Defendant has failed to establish the requisite prejudice and Ground Two is denied.

Ex. I at 112 (internal record citations and footnote omitted). Petitioner appealed, and the First DCA per curiam affirmed the state court's decision without issuing a written opinion. Ex. M.

To the extent that the First DCA affirmed the trial court's denial on the merits, this Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.[18] Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to federal habeas relief on Ground Five.

Even assuming the state court's decision is not entitled to deference, Petitioner's claim has no merit. Regardless of whether Petitioner is referring to the tattoos on his arms or leg, the result would not change. The leg tattoo was discussed above in Ground Four. Simply put, Petitioner was not solely identified by his tattoos. Mr. Zager did not testify that Petitioner had a leg tattoo; he identified Petitioner in part by his arm tattoos. The state argued in closing that the jury should compare the photos of Petitioner's tattoos taken on the day of trial with the surveillance videos and the still photos taken from the surveillance videos. Moreover, Petitioner does not dispute that he was in the store prior to the burglary,

---

[18] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," this Court presumes the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

and the surveillance video from the day before the burglary shows that his arm was tattooed. See Ex. B at 51. Ground Five is denied.

### *Ground Six*

According to Petitioner, his trial counsel was ineffective for failing to question the defense witness (Brenda Haywood, Petitioner's grandmother) about his leg tattoo. Doc. 1 at 23-24. He argues that at his trial, he was identified by a tattoo, and that during the state's closing argument, the state asked the jury to take the picture of Petitioner's leg tattoo back to the jury room to compare to the surveillance videos. Id. at 24. Petitioner contends, however, that he did not have the leg tattoo prior to his arrest, and his counsel was ineffective for failing to ask Ms. Haywood whether he had the tattoo prior to his arrest. Id.

Petitioner raised this claim as ground three in his Rule 3.850 motion. The court identified Strickland as controlling precedent for ineffective assistance of counsel claims, and found as follows:

> In Ground Three, Defendant asserts that counsel rendered ineffective assistance for failing to question his grandmother, Ms. Haywood, regarding the leg tattoo when she testified at trial. He states that Ms. Haywood would have testified that Defendant did not have the leg tattoo prior to his arrest. He provided Ms. Haywood's affidavit in conjunction with Ground One. Based on the same reasoning set forth in Grounds One and Two, the Court finds no error on the part of counsel for not questioning Ms. Haywood regarding the tattoo, and no resulting prejudice. In addition, the Court notes that Ms. Haywood acknowledged before the jury that the perpetrator caught on the video looks like Defendant.[19]

---

[19] She made this statement when viewing the still photographs from the surveillance video of the day before the burglary. See Ex. B at 100-02.

Ex. I at 112-13 (internal record citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the state court's decision without issuing a written opinion. Ex. M.

To the extent that the First DCA affirmed the trial court's denial on the merits, this Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.[20] Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The record supports the state court's conclusion. Thus, Petitioner is not entitled to federal habeas relief on Ground Six.

### Ground Seven

Petitioner claims that his trial counsel was ineffective for failing to object to the state's evidence brought forth on the day of trial and for failing to properly investigate and prepare a misidentification defense. Doc. 1 at 25-26. Specifically, Petitioner argues that his counsel should have objected to the pictures of his leg tattoo taken on the day of trial. Id. at 25. He claims that his "[c]ounsel's error resulted in [him] being identified by a tattoo he did not have at the time the crime was committed." Id. He further argues that had counsel objected and requested time to prepare a defense as to this evidence, "counsel could have presented witnesses as to the [Petitioner] not having the tattoos, or . . . jail records showing the [Petitioner] did not have the tattoo." Id. at 26.

_____

[20] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," this Court presumes the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

Petitioner raised this claim as ground four in his Rule 3.850 motion. The court identified Strickland as controlling precedent for ineffective assistance of counsel claims, and found as follows:

In Ground Four, Defendant essentially raises similar claims to Grounds One and Two. Defendant alleges that counsel was ineffective for failing to object to evidence brought forth the day of trial. Specifically, he argues that counsel should have objected when the State introduced photographs of his tattooed leg. He states that this error resulted in identification based upon a tattoo he did not have at the time the crime was committed. He argues that had counsel objected and requested additional time to prepare a defense, counsel could have presented the jail records showing that he did not have the tattoo at the time the crime was committed. Further, he argues that he was prejudiced because this evidence ultimately led to a finding of guilt.

Initially, the Court notes that Defendant provides no basis for an objection, other than requesting additional time to obtain jail records showing that he did not have the leg tattoo prior to his arrest. As set forth previously, the Arrest and Booking Report shows that Defendant had a distinguishing left calf tattoo at the time of his arrest. Further, while interviewing Defendant at the Baker County Jail, Detective Fusco observed that Defendant had the same tattoos as the perpetrator on the security video. Thus, the Court finds no error on the part of counsel for failing to object and seek more time to obtain evidence showing Defendant did not have the left leg tattoo at the time of his arrest because such an attempt would have been futile.

Additionally, although Defendant argues that this evidence of the leg tattoo ultimately led to his conviction, the record reflects that he was first identified based on other characteristics and similarities. The State's main witness, Mr. Zager, testified that he remembered his interaction with Defendant in the store prior to the burglary due to unusual questions and behaviors exhibited by another person who accompanied Defendant to the store. He also testified that he recognized similarities between Defendant and the masked perpetrator while reviewing the security video. He stated that

-33-

Defendant had the same shorts, shirt, shoes, build, and arm tattoos. He later picked Defendant's photograph out of a photospread. He never testified regarding Defendant's leg tattoo or identified Defendant on this basis. Moreover, during trial, Defendant's own grandmother acknowledged that the person on the security video looked like Defendant. Thus, assuming <u>arguendo</u> that counsel should have objected to the introduction of the photograph, the Court finds no prejudice to his case as the trial testimony reflects that he was identified based on other similarities, and not primarily due to his leg tattoo. Ground Four is denied.

Ex. I at 113-14 (internal record citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the state court's decision without issuing a written opinion. Ex. M.

To the extent that the First DCA affirmed the trial court's denial on the merits, this Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.[21] Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The record supports the state court's adjudication of this claim. Petitioner is not entitled to federal habeas relief on Ground Seven.

### *Ground Eight*

According to Petitioner, his trial counsel was ineffective for failing to pursue, obtain, and present forensic evidence in the form of a more clear version of the surveillance video footage. Doc. 1 at 27-28. He argues that if the tape had "not been blurry[,] the State's

---

[21] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," this Court presumes the appellate court "adopted the same reasoning." <u>Wilson</u>, 138 S. Ct. at 1194.

witness would have realized that the tattoos of the suspects were distinguishable from" his tattoos. Id. at 27.

Petitioner raised this claim as ground five in his Rule 3.850 motion. The court identified Strickland as controlling precedent for ineffective assistance of counsel claims, and found as follows:

> In ground five, Defendant argues that counsel rendered ineffective assistance for failing to obtain a forensic laboratory technician to prepare still photographs of the security video and to testify regarding Defendant's arm tattoos. Defendant asserts that the video was blurry and that if clear photographs had been provided, Mr. Zager would have realized that the suspect's tattoos were distinguishable from Defendant's tattoos. He states that counsel's failure to secure an expert resulted in Mr. Zager providing speculative testimony regarding the tattoos and leading the jury to believe that Defendant's tattoos matched those in the video.

> Initially, the Court notes that the State introduced still photographs from the video during Mr. Zager's testimony and he acknowledged that these photographs were blurrier than the video. Further, Mr. Zager testified that when he saw the video of the burglary, he first noticed the same shorts, the same shirt, and the same shoes. He next noticed the arm tattoos. He also noticed that the suspect in the video had a similar build to Defendant. He later picked Defendant out of a photospread. When questioned on cross-examination whether he recognized the tattoos in the video to be the same, he clarified that they only appeared similar. He stated that he could not recognize specifically what the tattoos were because the video was too blurry. During closing arguments, the State pointed out specific dark areas in the tattoos that matched, as well as similarities between the clothing, in the daytime security video and the video of the burglary. Defense counsel argued that quality of the video made it impossible to determine if the tattoos matched.

> A review of the testimony reflects that Mr. Zager did not speculate regarding the tattoos or lead the jury to believe that the tattoos matched. Rather, he acknowledged that the video

was blurry and that the tattoos only appeared similar. In addition, he testified that he identified Defendant based on other characteristics besides his arm tattoos. During closing, the State pointed to similarities between the tattoos and defense counsel argued that it was impossible to determine if they matched. Moreover, as discussed previously, Defendant's own grandmother indicated that the suspect caught on video looked like Defendant. In light of these factors, the Court finds no prejudice to Defendant's case based on a failure to secure an expert to provide clear photographs and testify regarding the tattoos. Therefore, Ground Five is denied.

Ex. I at 114-16 (internal record citations and footnote omitted). Petitioner appealed, and the First DCA per curiam affirmed the state court's decision without issuing a written opinion. Ex. M.

To the extent that the First DCA affirmed the trial court's denial on the merits, this Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.[22] Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. He is not entitled to federal habeas relief on Ground Eight.

Even assuming the state court's adjudication is not entitled to deference, the claim has no merit. The blurriness of the videos and photos played into counsel's trial strategy. He argued to the jury that it was impossible to determine whether the tattoos matched because the videos and still photos were too blurry. Petitioner is simply unsatisfied with how the jury

_____

[22] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," this Court presumes the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

weighed the evidence. Upon review of the record, the Court finds that trial counsel was not ineffective for failing to obtain an expert to clarify the videos and photos or to testify regarding the tattoos. Ground Eight is denied.

### *Ground Nine*

Petitioner argues that his trial counsel was ineffective for failing to have him display his leg tattoo to the jury and to Mr. Zager. Doc. 1 at 29-30. He acknowledges that pictures of the tattoos were shown, but he claims that viewing the tattoos in court would have been favorable to the defense. Id. at 29.

Petitioner raised this claim as ground six in his Rule 3.850 motion. The court identified Strickland as controlling precedent for ineffective assistance of counsel claims, and found as follows:

> In Ground Six, Defendant asserts that counsel rendered ineffective assistance for failing to have Defendant display his leg tattoo to both the jury and Mr. Zager. Defendant alleges that he had no tattoo on his leg at the time the crime was committed. He states that if Mr. Zager had viewed Defendant's leg tattoo, he would have distinguished it from the tattoo in the security video and recanted his testimony. In addition, he argues that if the jury had viewed his tattoo, they would have been able to distinguish it from the tattoo in the video.
>
> As discussed in previous grounds, the Arrest and Booking Report indicates that Defendant had had a distinguishing left calf tattoo at the time of arrest. Detective Fusco observed that Defendant had the same tattoos as the suspect in the security video prior to his arrest. Further, throughout his testimony, Mr. Zager never testified regarding Defendant's leg tattoo and never identified Defendant on this basis. Any assertion that Mr. Zager would have distinguished the tattoos or recanted his testimony upon viewing the leg tattoo is wholly speculative. Moreover, the State published a photograph of Defendant's leg tattoo taken on the day of trial for the jury to compare to the video. As Mr. Zager never

> identified Defendant based on a leg tattoo and the jury had a photograph of Defendant's tattoo taken on the day of trial, the Court finds no error on the part of counsel for failing to have Defendant display his tattoo during trial, and no resulting prejudice. Ground Six is denied.

Ex. I at 116 (internal record citations and footnote omitted). Petitioner appealed, and the First DCA per curiam affirmed the state court's decision without issuing a written opinion. Ex. M.

To the extent that the First DCA affirmed the trial court's denial on the merits, this Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.[23] Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to federal habeas relief on Ground Nine.

### *Ground Ten*

Petitioner asserts that his trial counsel was ineffective for failing to have Petitioner speak during the trial. Doc. 1 at 31. Mr. Zager testified that prior to the burglary, Petitioner was in his store and they engaged in a conversation. Id. Petitioner asserts that had he been called at trial simply to have his voice heard, it would have proven to Mr. Zager that he was mistaken in his identification of Petitioner. Id.

---

[23] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," this Court presumes the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

Petitioner raised this claim as ground seven in his Rule 3.850 motion. The court identified Strickland as controlling precedent for ineffective assistance of counsel claims, and found as follows:

> In Ground Seven, Defendant alleges that counsel rendered ineffective assistance for failing to have Defendant speak during trial. Defendant argues that had Mr. Zager heard Defendant's voice during trial, he would have realized that he mistakenly identified Defendant and would have recanted his testimony. Initially, the Court notes that any contention that Mr. Zager would have recanted his identification of Defendant after hearing his voice is speculative. Further, as set forth previously, Mr. Zager identified Defendant based on a number of characteristics, including his clothing, his build, and his arm tattoos. Mr. Zager also picked Defendant's photograph out of a photospread. Throughout his entire testimony, Mr. Zager never testified regarding Defendant's voice or identified Defendant on this basis. As the record is devoid of any indication that Mr. Zager identified Defendant based upon his voice, the Court finds no error on the part of counsel for failing to have Defendant speak during trial, and no resulting prejudice. Therefore, Ground Seven is denied.

Ex. I at 117 (internal record citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the state court's decision without issuing a written opinion. Ex. M.

To the extent that the First DCA affirmed the trial court's denial on the merits, this Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.[24] Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not

---

[24] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," this Court presumes the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to federal habeas relief on Ground Ten.

### *Ground Eleven*

According to Petitioner, his trial counsel was ineffective for failing to call any non-family witnesses. Doc. 1 at 32-33. He asserts that while his grandmother testified on his behalf, she was "repeatedly discredited" given her relationship to Petitioner. Id. at 32. He argues that counsel should have called Roy Dillion and Dale Jones to testify as to his whereabouts on the night the crime occurred. Id. at 33.

Petitioner raised this claim as ground eight in his Rule 3.850 motion. The court identified Strickland as controlling precedent for ineffective assistance of counsel claims, and found as follows:

> In Ground Eight, Defendant avers that counsel was ineffective for failing to present non-family defense witnesses. Defendant states that the only witness presented to testify regarding his alibi defense was his grandmother, Ms. Haywood, and that she was discredited based upon her personal relationship with Defendant. Therefore, Defendant alleges that counsel should have presented two non-family witnesses, Roy Dillion and Dale Jones, to testify that he had been at a cookout the night of the burglary.
>
> At trial, Ms. Haywood testified that she hosted a cookout at her home on July 8, 2009 which ran into the early morning hours of July 9, 2009. She stated that Defendant was living with her and attended the cookout, but became ill after eating spaghetti with ranch dressing. She testified that . . . the only way in and out of her home is through the front or back doors, as there are burglar bars covering each window. She also stated that she locks both of these doors and keeps the only key with her. She stated that, on the night in question, she locked the doors around 1:00 a.m. and that no one else had access to the key after that time. She testified that two of Defendant's friends rang the doorbell around 4:00 a.m., but

she told them Defendant was sick. Further, she stated that she left for work around 6:00 a.m. and that Defendant was still in the home. She testified that if he would have left any time in the early morning hours, she would have known because she would have had to let him out.

Mr. Zager testified that his landlord called him around 6:30 a.m. on July 9, 2009, to inform him that a burglary occurred at his business. Ms. Haywood testified that she knew the burglary occurred at 5:00 a.m. and was absolutely certain Defendant was in her home at this time.

Initially, the Court notes that counsel cannot be ineffective for failing to present Mr. Dillion's and Mr. Jones' testimony that Defendant attended the cookout, as such evidence would have been cumulative to Ms. Haywood's testimony. See Maharaj v. State, 778 So. 2d 944, 957 (Fla. 2000) ("Failure to present cumulative evidence is not ineffective assistance of counsel."). Additionally, Defendant complained of counsel's failure to present other alibi witnesses during sentencing and counsel maintained that he stood by the alibi witness presented, Ms. Haywood.

Moreover, any testimony that Defendant attended the cookout would have been irrelevant to his alibi, in light of Ms. Haywood's testimony. Ms. Haywood testified that Defendant attended the cookout, became ill, and was locked inside her home from 1:00 a.m. until 6:00 a.m. In his motion, Defendant asserts that Ms. Haywood was truthful regarding Defendant's alibi. Mr. Zager's and Ms. Haywood's testimony establishes that the burglary occurred between these hours. As such, Mr. Dillion and Mr. Jones would only have been able to testify regarding Defendant's whereabouts earlier in the evening while he attended the cookout, rather than the time the burglary actually occurred. Therefore, the Court finds no error on the part of counsel and Ground Eight is denied.

Ex. I at 117-19 (internal record citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the state court's decision without issuing a written opinion. Ex. M.

To the extent that the First DCA affirmed the trial court's denial on the merits, this Court will address the claim in accordance with the deferential standard for federal court

review of state court adjudications.[25] Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The state court's conclusion is supported by the record.[26] Petitioner is not entitled to federal habeas relief on Ground Eleven.

### Ground Twelve

Petitioner claims that his trial counsel was ineffective for failing to convey a 3-year plea offer to him. Doc. 1 at 34-35. He asserts that he did not learn about the 3-year offer until after his trial, and had he known before trial, he would have accepted it. Id.

Petitioner raised this claim as ground five in his Rule 3.850 motion. The state court held an evidentiary hearing on this ground only. In its order denying the claim, the state court identified Strickland as controlling precedent for ineffective assistance of counsel claims, and found as follows:

> In Ground Nine, Defendant alleges that counsel, Todd Niemczyk, was ineffective for failing to convey a plea offer. Defendant states that he initially rejected an eight-year plea offer prior to trial. Defendant alleges that co-counsel, Senovia

---

[25] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," this Court presumes the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

[26] At the state court evidentiary hearing on Petitioner's claim raised in Ground Twelve of this Petition, his counsel testified that they looked for alibi witnesses, and Petitioner gave him two names of potential witnesses who may help his case (Jamal Peterson and Justin). Counsel's recollection was that both of those individuals were in jail at the time so they decided not to use them as witnesses. Ex. J at 390-91.

Lance,[27] informed him after the guilty verdict that there had been a three-year plea offer, which was never conveyed to him. Further, Defendant states that he would have accepted this offer had he known of its existence.

At the August 28, 2014 evidentiary hearing, Defendant testified that he rejected an eight-year plea offer. Defendant stated that he wanted to submit two counter-offers to the State, an eighteen-month offer and a five-year offer, but Mr. Niemczyk refused to present the five-year offer because he believed the State would reject it. Defendant testified that after trial, Ms. Portis asked why he did not accept the three-year offer and he indicated that he knew of no such offer. Defendant believed that Mr. Niemczyk intentionally withheld the three-year offer because Mr. Niemczyk did not like Defendant or Defendant's brother.

Defendant's grandmother, Ms. Haywood, testified that Mr. Niemczyk informed her of the eight-year offer and advised that the State would not go any lower. Ms. Haywood stated that, prior to trial, Mrs. Portis inquired as to why Defendant would not accept the three-year offer. Ms. Haywood responded that she was never advised of any offer besides the eight-year offer and that she did not believe Defendant knew of the three-year offer. Ms. Haywood also acknowledged that she was not privy to every conversation between Defendant and counsel.

Mr. Niemc[z]yk testified that he has been an attorney for nine years and was an employee of the Public Defender's Office and Regional Conflict Counsel. Mr. Niemc[z]yk testified that he had an independent recollection of Defendant's case and that he reviewed the case file. Mr. Niemc[z]yk acknowledged that the State made a three-year offer at Defendant's arraignment, which Defendant rejected. Mr. Niemc[z]yk testified that his case notes depict a circle around the three-year offer and explained that, as common practice, he circles plea offers that have been conveyed to clients. Mr. Niemc[z]yk testified that his notes indicate that the three-year offer expired on November 18, 2009, but he recalled that the offer stayed open longer, possibly until the final pre-trial. Further, Mr. Niemc[z]yk stated that he has an independent

---

27 Ms. Lance and Ms. Portis are one in the same.

recollection of conveying the three-year offer and it is confirmed in his notes.

Mr. Niemc[z]yk stated that it would have been his advice to accept the offer. Mr. Niemc[z]yk testified that the State rejected a thirteen-month counter-offer, but he did not remember Defendant requesting him to convey an eighteen-month or five-year counter-offer. Additionally, Mr. Niemc[z]yk stated that the case file contains no information regarding an eight-year offer. Mr. Niemc[z]yk indicated that he has a duty to convey every offer or counter-offer and that he would have conveyed an offer even if he believed the State would reject it. Mr. Niemc[z]yk stated that he requested Mrs. Portis' help in an attempt to convince Defendant to accept the three-year offer. Mr. Niemc[z]yk also testified that he does not recall any animosity between himself and Defendant, other than the possible animosity from trying to convince him to accept the offer.

Mrs. Portis testified that she has eight years of experience working for the Public Defender's Office. Mrs. Portis testified that Mr. Niemc[z]yk solicited her assistance in this case because of her ability to converse with defendants. Mrs. Portis stated that Mr. Niemc[z]yk would have advised her of any plea offers. She stated that she had a specific recollection of a three-year plea offer and thirteen-month counter offer. She admitted that she did not have an independent recollection of meeting with Defendant to discuss the three-year offer, but explained that her common practice consisted of meeting a defendant and his family to convince a defendant to accept a favorable deal. She confirmed Mr. Niemc[z]yk's testimony that the three-year offer was circled in the case file and that it was customary for him to circle favorable plea offers. She testified that it was standard for her to explain the sentencing practices of presiding judges and that she would have explained to Defendant that the presiding trial judge would have given the maximum sentence. In addition, she recalled a telephone call from Defendant's grandmother, during which his grandmother indicated that Defendant did not know of the three-year offer. However, Mrs. Portis informed Defendant's grandmother that she believed the offer had been conveyed to Defendant.

After considering the testimony presented during the evidentiary hearing, the Court finds that Mr. Niemc[z]yk's and Mrs. Portis' testimony was both more credible and more persuasive than Defendant's and Ms. Haywood's allegations. See Laramore v. State, 699 So. 2d 846 (Fla. 4th DCA 1997). Mr. Niemc[z]yk and Mrs. Portis each have at least eight years experience in criminal defense. Based on the case file and personal recollection, Mr. Niemc[z]yk stated that Defendant specifically rejected a three-year offer. Mr. Niemc[z]yk indicated that he conveyed a thirteen-month counter-offer, but had no recollection of an eight-year plea offer or any other counter-offers. Mrs. Portis testified that she recalled a three-year plea offer and thirteen-month counter-offer, although she acknowledged that she did not recall meeting with Defendant to discuss the offer. She further testified that a three-year offer was circled in the case file. As the Court finds this testimony more credible than Defendant's allegations, Ground Nine is denied. See Alcorn v. State, 121 So. 3d 419 (Fla. 2013) (establishing new prejudice standard for ineffective assistance of counsel claims based upon the failure to convey a plea offer).

Ex. I at 119-22 (footnote modified). Petitioner appealed, and the First DCA per curiam affirmed the state court's decision without issuing a written opinion. Ex. M. To the extent that the First DCA affirmed the trial court's denial on the merits, this Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.[28]

The United States Supreme Court has long recognized that Strickland's two-part inquiry applies to ineffective assistance of counsel claims arising out of the plea process. See Hill v. Lockhart, 474 U.S. 52, 57 (1985). "[D]efense counsel has the duty to communicate formal offers from the prosecution to accept a plea on terms and conditions

_____

[28] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," this Court presumes the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

that may be favorable to the accused." <u>Missouri v. Frye</u>, 566 U.S. 134, 145 (2012). If defense counsel fails to do so and the offer expires, defense counsel did not render effective assistance of counsel. <u>Id.</u> To show prejudice when a plea offer expires or is rejected because of counsel's ineffective assistance, a petitioner must demonstrate that "a reasonable probability [exists] that the plea offer would have been presented to the court (i.e., that the defendant would have accepted the plea and the prosecution would not have withdrawn it in light of intervening circumstances), that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the judgment and sentence that in fact were imposed." <u>Lafler v. Cooper</u>, 566 U.S. 156, 164 (2012).

At the state court evidentiary hearing on this claim, Petitioner's trial counsel testified that based on a review of his file and from his own independent recollection, he conveyed the state's 3-year offer to Petitioner. Ex. J at 397-98, 399-400. He testified that he recalled trying to convince Petitioner to take the state's 3-year offer as late as the final pretrial.[29] <u>Id.</u> at 384-85, 395; <u>see also</u> <u>id.</u> at 397. Petitioner, however, rejected the offer.[30] Indeed,

---

[29] Counsel testified that his notes showed November 18th as the expiration date of the three-year offer. Ex. J at 384. However, he recalled that he "was able to keep that open at least until final pretrial. In fact, I do have a note in my case file on December 9th where I wrote, 'Discussed last-chance offer with defendant at final pretrial.' So it's my understanding that that three years I was able to maintain up to final pretrial, if not the day of jury selection, but I don't have a recollection of that for sure." <u>Id.</u> at 384-85. He later testified that he had "some recollection" of trying to convince Petitioner to take the three-year offer at jury selection. <u>Id.</u> at 397.

[30] Petitioner testified that he countered the state's 8-year offer with 18-months and then 5-years, but his trial counsel did not have an independent recollection or notes confirming an 8-year offer from the state or 18-month or 5-year counter-offers (counsel only had noted the 3-year offer from the state and Petitioner's 13-month counter-offer that the state rejected). <u>Compare</u> Ex. J at 379-80, <u>with</u> <u>id.</u> at 386-87.

counsel's case notes dated December 28, 2009, reflected: "'December ready for trial. Has faith in God. Says Assistant State Attorney is scared.'" Ex. J at 386.

Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. After considering the testimony presented at the state court evidentiary hearing, the state court specifically found Petitioner's trial counsels' testimony to be more credible than Petitioner's and his grandmother's testimony. The record supports the state court's finding that trial counsel conveyed the 3-year plea offer and Petitioner knowingly rejected it. Petitioner is not entitled to federal habeas relief on Ground Twelve.

### Ground Thirteen

Petitioner argues that his trial counsel was ineffective for failing to file a motion to dismiss. Doc. 1 at 36-37. He states that Detective Fusco's affidavit for his arrest warrant does not indicate that she received sworn testimony from the state's only witness (Mr. Zager) implicating Petitioner in the crime, and there was no probable cause for the arrest warrant. Id. at 36. He also claims that Detective Fusco fabricated the anonymous tip and used deceptive means in obtaining the warrant. Id. Finally, Petitioner claims that his counsel should have challenged the weight and sufficiency of the evidence, because no witness was able to positively identify him and there was no physical evidence connecting him to the crime. Id. at 37.[31]

---

[31] Insofar as Petitioner is raising the same insufficiency-of-the-evidence claim as he did in Ground Fourteen, it is due to be denied for the reasons stated.

Petitioner raised this claim as ground ten in his Rule 3.850 motion. The court identified Strickland as controlling precedent for ineffective assistance of counsel claims, and found as follows:

> In Ground Ten, Defendant avers that counsel rendered ineffective assistance for failing to file a motion to dismiss based upon a lack of probable cause for his arrest. Specifically, Defendant argues that Detective Fusco fabricated an anonymous tip in obtaining the arrest warrant. Defendant states that Detective Fusco asserted in her affidavit for arrest warrant that Mr. Zager identified Defendant, which was contrary to Mr. Zager's trial testimony. Defendant further states that Detective Fusco alleged that, based on the security videos, one suspect's tattoos matched Defendant's tattoos. Defendant argues that if this statement were true, the State would not have had to introduce photographs of Defendant's tattoos at trial. Additionally, Defendant points to Mr. Zager's trial testimony that the suspects wore masks, that the tattoos on one suspect were only similar to Defendant's tattoos, and that Defendant was not the only African-American in Jacksonville with a similar build as the suspect in the video.

> Initially, the Court notes that Defendant's claims are procedurally barred as they could and should have been raised on direct appeal. See Edwards v. Crews, 124 So. 3d 422, 423 (Fla. 1st DCA 2013) ("Challenges to the original probable cause are properly raised at trial and on direct appeal but are not a viable basis for postconviction relief or a postconviction writ of habeas corpus." (citation omitted)); Jessie v. State, 726 So. 2d 356, 356 (Fla. 5th DCA 1999) ("The absence of probable cause for an arrest is an issue that could and should have been raised on direct appeal, and it is accordingly not a viable basis for post-conviction relief."); see also Clift v. State, 43 So. 3d 778, 780 (Fla. 1st DCA 2010) (stating claims of insufficient evidence are procedurally barred in collateral proceedings). Defendant cannot attempt to circumvent this procedural bar by couching his claim as one of ineffective assistance of counsel. See Jessie, 726 So. 2d at 356-57 (finding defendant's argument that counsel was ineffective for failing to argue lack of probable cause for arrest at suppression hearing was "an attempt to re-litigate substantive matters which should have been presented on direct appeal, under the guise

of ineffective assistance of counsel'); see generally Valle v. State, 705 So. 2d 1331, 1336 n.6 (Fla. 1997).

Moreover, the Court finds the record refutes Defendant's notion that there was insufficient probable cause for his arrest. Contrary to Defendant's assertions, before Detective Fusco arrested Defendant, Mr. Zager did identify Defendant by picking him out of a photospread. Also, although not acknowledged by Defendant, Mr. Zager also testified that he identified Defendant based on other similarities, including the same clothing and similar arm tattoos. As to his allegation that Detective Fusco made untrue statements regarding the similar nature of the suspect's and Defendant's tattoos, the Court notes that simply because the State chose to present photographs of Defendant's tattoos for the jury to compare to the security videos does not mean that Detective Fusco's statements were untrue. Further, contrary to Defendant's assertions that Detective Fusco determined that the tattoos matched by comparing the security videos, the Affidavit for Arrest Warrant indicates that Detective Fusco made this determination both by comparing the videos and through personal observation of Defendant's tattoos. Detective Fusco also noted that Defendant's physical description was the same as the suspect in the video and that when Defendant was caught on video the day prior to the burglary, he was wearing the same clothing as the burglary suspect. As such, the Court finds there was sufficient probable cause for arrest and counsel was not ineffective for failing to file a motion to dismiss on such a basis. Therefore, Ground Ten is denied.

Ex. I at 122-24 (internal record citations and footnote omitted). Petitioner appealed, and the First DCA per curiam affirmed the state court's decision without issuing a written opinion. Ex. M.

To the extent that the First DCA affirmed the trial court's denial on the merits, this Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.[32] Upon review of the record, this Court concludes that

---

[32] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," this Court presumes the appellate court "adopted the same reasoning." Wilson,

the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. The record supports the state court's adjudication of this claim. Additionally, a review of the trial transcript reflects that the evidence and testimony presented at trial supported Petitioner's conviction. See Hallford v. Culliver, 459 F.3d 1193, 1205-06 (11th Cir. 2006) (per curiam) ("The relevant question in reviewing the sufficiency of the evidence supporting a criminal conviction is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" (quoting Jackson v. Virginia, 443 U.S. 307, 319 (1979)). Petitioner is not entitled to federal habeas relief on Ground Thirteen.

### Ground Fourteen

Petitioner contends that his trial counsel was ineffective for failing to depose Mr. Zager regarding his ability to identify Petitioner and Detective Fusco regarding her fabricated arrest warrant affidavit. Doc. 1 at 38-39. He also claims counsel was ineffective for failing to file a motion to dismiss regarding Mr. Zager's identification of him and the lack of evidence confirming his identity. Id. at 38.

Petitioner raised this claim as ground eleven in his Rule 3.850 motion. The court identified Strickland as controlling precedent for ineffective assistance of counsel claims, and found as follows:

---

138 S. Ct. at 1194.

In Ground Eleven, Defendant argues that counsel rendered ineffective assistance for failing to depose Mr. Zager and Detective Fusco. Specifically, Defendant argues that if counsel had deposed these witnesses prior to trial, he would have learned information that could have been used to support a motion to dismiss and/or a motion for judgment of acquittal. Defendant also asserts that counsel's failure to depose Mr. Zager and Detective Fusco deprived him of his constitutional right to confront the witnesses against him.

Initially, the Court notes that Defendant appears to be couching improper challenges to the validity of his arrest and the sufficiency of the evidence as a claim of ineffective assistance of counsel. To the extent he is doing so, his claims are procedurally barred. See generally, Valle, 705 So. 2d at 1336 n.6; see also, Clift, 43 So. 3d 780 (weight and sufficiency of the evidence); Jessie, 726 So. 2d at 356-57 (lack of probable cause for arrest). To the extent he is not doing so, his claims are refuted by the record, as discussed in more detail below.

With regard to deposing Mr. Zager, Defendant states that counsel would have learned that Mr. Zager was not able to positively identify Defendant. In support, Defendant points to Mr. Zager's testimony that the suspects wore masks, that the security videos were too blurry to determine whether the tattoos matched, and that Defendant was not the only African-American with a similar build to one of the suspects. Defendant avers that this questionable identification could have been used to support a motion to dismiss, due to the lack of evidence linking Defendant to the crime, or used to support a motion for judgment of acquittal.

This argument is without merit. As set forth previously, Mr. Zager did positively identify Defendant. Thus, counsel could not have filed a motion to dismiss or a motion for judgment of acquittal on this basis. Moreover, counsel did move for judgment of acquittal, arguing that the State did not meet the burden of proving any of the elements of burglary. However, the trial court denied this motion. Thus, Defendant has failed to establish he was prejudiced by counsel's failure to depose Mr. Zager.

With regard to deposing Detective Fusco, Defendant argues counsel would have learned that Detective Fusco fabricated the Affidavit for Arrest Warrant. To this end, Defendant argues that the security videos were too blurry for someone to accurately determine whether Defendant's tattoos matched those of the burglary suspect, as Detective Fusco allegedly did. Defendant also argues that Detective Fusco did not see his leg tattoo during the police interrogation and, therefore, could not have used that to tie him to the burglary suspect on the video. According to Defendant, counsel could have used this information to support a motion to dismiss and/or a motion for judgment of acquittal.

This argument, too, is without merit. The Affidavit for Arrest indicates that Defendant was identified based on several factors. First, he was identified through an anonymous tip. After viewing the security videos and interviewing Defendant, Detective Fusco determined that the suspect and Defendant had a similar build, matching clothing, and matching tattoos. Further, Mr. Zager positively identified Defendant from a photospread. There is nothing to indicate that Detective Fusco fabricated the affidavit, as the facts set forth were consistent with Mr. Zager's testimony. Therefore, there would have been no basis for a motion to dismiss and the Court finds no error on the part of counsel for failing to depose Detective Fusco.

Finally, not only was counsel not ineffective for failing to depose Mr. Zager and Detective Fusco, but counsel's failure to do so did not result in a confrontation clause violation. Mr. Zager testified at trial and was subject to cross-examination by defense counsel. Detective Fusco did not testify at trial. Consequently, Ground Eleven is denied as to all claims.

Ex. I at 124-26 (internal record citations omitted). Petitioner appealed, and the First DCA per curiam affirmed the state court's decision without issuing a written opinion. Ex. M.

To the extent that the First DCA affirmed the trial court's denial on the merits, this Court will address the claim in accordance with the deferential standard for federal court

review of state court adjudications.[33] Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to federal habeas relief on Ground Fourteen.

### Ground Fifteen

Petitioner argues that his trial counsel was ineffective for failing to file the proper motions to have the state correct the defective information before he made any plea to the merits.[34] Doc. 1 at 40-41. He claims that there was no sworn testimony from Mr. Zager implicating him, and thus the information was filed without the sworn testimony of a material witness. Id.

Petitioner raised this claim as ground twelve in his Rule 3.850 motion. The court identified Strickland as controlling precedent for ineffective assistance of counsel claims, and found as follows:

> In Ground Twelve, Defendant asserts that counsel rendered ineffective assistance by failing to have the State correct the defective information prior to Defendant entering a plea to it. Defendant argues that the information was defective because it contained no sworn testimony from Mr. Zager. However, the Court notes that claims regarding whether a state attorney took sworn testimony before filing an information are not proper in a post-conviction proceeding. Wilson v. State,

---

[33] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," this Court presumes the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

[34] Petitioner pled not guilty to the one-count amended information.

> 109 So. 3d 240 (Fla. 4th DCA 2013); see also Collins v. State, 97 So. 3d 305 (Fla. 4th DCA 2012) (stating attempts to challenge the conviction based on allegations that the state attorney did not receive sworn testimony from a material witness before filing the information are frivolous). Therefore, Ground Twelve is denied.

Ex. I at 126. Petitioner appealed, and the First DCA per curiam affirmed the state court's decision without issuing a written opinion. Ex. M.

To the extent that the First DCA affirmed the trial court's denial on the merits, this Court will address the claim in accordance with the deferential standard for federal court review of state court adjudications.[35] Upon review of the record, this Court concludes that the state court's adjudication of this claim was not contrary to clearly established federal law, did not involve an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings. Petitioner is not entitled to federal habeas relief on Ground Fifteen.

Even assuming the state court's adjudication is not entitled to deference, this claim has no merit. For a defective information to be a cognizable claim in a federal habeas corpus action, the charging document must be so defective that it deprives the court of jurisdiction. DeBenedictis v. Wainwright, 674 F.2d 841, 842 (11th Cir. 1982) (citations omitted) ("The sufficiency of a state indictment or information is not properly the subject of federal habeas corpus relief unless the indictment or information is so deficient that the convicting court is deprived of jurisdiction."). The amended information identified Petitioner and set forth the

---

[35] In looking through the appellate court's affirmance to the circuit court's "relevant rationale," this Court presumes the appellate court "adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

charges and circumstances of the alleged offense. Ex. A at 26. It also contained the required

oath of the Assistant State Attorney, certifying that the allegations "are based upon facts that

have been sworn to as true, and which, if true, would constitute the offense therein charged,"

that the "prosecution is instituted in good faith," and "that testimony under oath has been

received from the material witness(es) for the offense." Id. Petitioner's trial counsel cannot

be deemed deficient for failing to filing a meritless motion. Therefore, Ground Fifteen is

denied.

Accordingly, it is

**ORDERED**:

1.      The Petition (Doc. 1) is **DENIED**, and this case is **DISMISSED with prejudice**.

2.      The Clerk shall enter judgment dismissing this case with prejudice, terminate

any pending motions, and close the file.

3.      If Petitioner appeals, the Court denies a certificate of appealability.[36] Because

this Court has determined that a certificate of appealability is not warranted, the Clerk shall

---

[36]    This Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), "or that the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 336 (2003) (quoting Slack, 529 U.S. at 484). "Where a district court has rejected the constitutional claims on the merits, . . . [t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." Slack, 529 U.S. at 484. However, when the district court has rejected a claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. After consideration of the record as a whole, the Court will deny a certificate of appealability.

terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

**DONE AND ORDERED** at Jacksonville, Florida, this 8th day of August, 2019.

TIMOTHY J. CORRIGAN
United States District Judge

JAX-3 7/22
c:
Jason Darrell West, #J14327
Counsel of Record